931 F.2d 888
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Worrell ROBOTHAM, Defendant-Appellant.
 No. 90-5786.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided April 25, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-89-85-R)
 Chester Leonard Smith, Jr., Holmes, McPherson, Miller, Edmonds & Smith, Virginia Beach, Va., for appellant.
 Jean M. Barrett, Assistant United States Attorney, Roanoke, Va., (argued), for appellee; E. Montgomery Tucker, United States Attorney, Thomas J. Bondurant, Assistant United States Attorney, Roanoke, Virginia, on brief.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and K.K. HALL, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Worrell Austin Robotham appeals his conviction on one count of conspiracy to distribute cocaine base, three counts of distribution, and two counts of possession. We affirm.
 
 I.
 
 2
 Robotham owned and operated a small food market in Roanoke, Virginia, that was targeted by the Drug Enforcement Administration ("DEA") as a site of illegal drug activities. The DEA employed an informant, James Casey, who made two crack cocaine purchases from Robotham and one from a middleman who worked for Robotham. The purchases from Robotham occurred outside his residence. Armed with a search warrant, DEA agents searched the home on July 8, 1989, and seized a large amount of cocaine base already packaged for distribution, various drug-related paraphernalia, marked money used by Casey for his purchases from Robotham, and a rent receipt in Robotham's name for an apartment in the city.
 
 
 3
 Robotham was then arrested, and a search of his person uncovered a key that fit the door of the apartment matching the rent receipt found at his residence. A search warrant for the apartment was obtained. The second search produced a number of items commonly used in "cooking," or manufacturing, cocaine base or "crack." It appeared that no one actually lived at this apartment.
 
 
 4
 Robotham was indicted on one count of conspiracy to distribute more than fifty grams of crack, three counts of distribution of crack, and two possession counts. After a jury trial, he was convicted on all six counts and received a 192-month sentence under the Sentencing Guidelines. He appeals the conviction. We affirm.
 
 II.
 
 5
 On appeal, Robotham raises a host of arguments. We will discuss each briefly.
 
 A.
 
 6
 Robotham contends that the evidence against him was insufficient because it rested solely on the testimony of Casey, a former heroin dealer and a paid informant. Even if Robotham's characterization of the evidence against him were correct, his attack on the witness's credibility would be an insufficient basis for a reversal of his conviction. Credibility evaluations are for the jury. United States v. Skipp, 409 F.2d 33, 36-37 (4th Cir.), cert. denied, 396 U.S. 864 (1969). In the case against Robotham, moreover, the evidence was more than Casey's testimony. Federal agents conducted surveillance of the three controlled purchases. A DEA agent testified about the modus operandi of the operation, including the use of marked money (which was subsequently seized in the first search) and the interviews with Casey conducted immediately after the purchases. Of course, the results of the two searches doubtless played no small part in the verdicts. Our inquiry is limited to determining "whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). We do not hesitate in ruling that the evidence here was sufficient to sustain the convictions on each count.
 
 B.
 
 7
 During the trial, a bomb threat was communicated to courthouse officials, and the district court instructed the jurors to leave the building. After the threat had been determined to be a hoax, the jury was allowed to return, and the court, at defense counsel's request, instructed the jury that the threat had nothing to do with the case. Thereafter, Robotham made a post-trial motion for a mistrial on the grounds that "the bomb threat probably influenced the jury adversely to my client...." The motion was denied, and Robotham now contends that this ruling constitutes reversible error.
 
 
 8
 A mistrial may be declared upon a showing of substantial prejudice. United States v. Jones, 542 F.2d 186 (4th Cir.), cert. denied, 426 U.S. 922 (1976). The decision is discretionary, and we will reverse the district court's ruling for abuse of discretion only. Id. at 194-95. Robotham made no showing below that any prejudice arose from the incident, and he does not now advance any arguments on appeal beyond his general entitlement to an impartial jury free from outside influence. See United States v. Arcienega, 574 F.2d 931 (7th Cir.) (no abuse of discretion for refusing to declare a mistrial after bomb threat received during jury deliberations), cert. denied, 437 U.S. 908 (1978). We feel, moreover, that it would be a bad practice to posit a new rule that would require a mistrial as a matter of course in such instances. The trial court did not abuse its discretion.
 
 C.
 
 9
 The appellant argues that the trial court erred in denying his motion to suppress the cocaine and other items seized from the first search of his home. He points to the fact that his wife, not he, owned the house, and he argues that the government failed to prove that he was actually living in the house during the investigation through the date of the search. In this latter regard, he testified that he had left the house some four days before the search because of marital problems and had not returned since. Moreover, he implied that the cocaine and other items seized belonged to one or more of the friends and relatives who were residing in the house at the time.
 
 
 10
 The government construes this argument as an attack on the legal sufficiency of the warrant itself; because there was no evidence presented at the suppression hearing to counter Robotham's assertion that he was not residing with his wife at the time, the government reasons that Robotham is arguing that there was no probable cause to support the issuance of the search warrant. The standard for review of this matter is whether the issuing magistrate "had a 'substantial basis for ... conclud[ing]' that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). We readily conclude that the affidavits in support of the warrant were sufficient to establish probable cause.
 
 
 11
 However, Robotham also objected to the introduction at trial of the seized items, arguing that they were irrelevant because they had not been shown to have any connection to the defendant. Construing his appeal as including an argument that the introduction of the evidence constituted an erroneous evidentiary ruling, we do not hesitate to reject the defendant's position. The admission of the seized items was preceded by testimony about the sales to Casey near the house, which had occurred immediately after Robotham entered and then exited the house. In addition, among the items seized were the marked bills used to purchase the drugs from Robotham and his co-conspirator. The relevancy of the items is beyond dispute.
 
 D.
 
 12
 Robotham renews an argument on appeal that he made below, namely, that the composition of the jury panel violated his constitutional right to equal protection because of the inclusion of only two blacks on the 33-member panel. Both of the black panel members were eventually chosen to serve as petit jurors in the case, so there clearly is no issue of the type addressed in Batson v. Kentucky, 476 U.S. 79 (1985). Robotham made no attempt to show that the process of selecting panels in the Western District of Virginia somehow operated to exclude certain groups. It is this selection process that must form the basis of an attack on the composition of a jury. Norris v. Alabama, 294 U.S. 587 (1935). Absent even the slightest indication that the selection process discriminated in some manner, we can find no error in the court's denial of appellant's motion.
 
 E.
 
 13
 On the day scheduled for the start of trial, Robotham's counsel moved for a continuance on the grounds that his client's wife would not be able to appear that day because of health problems. It was conceded that she had not been subpoenaed to appear because counsel believed that she would appear voluntarily to give testimony corroborating her husband's version of the facts. No evidence was offered to demonstrate that she was actually unable to attend. The motion was denied, and the trial concluded one day later without her testimony.
 
 
 14
 Our review of a denial of a continuance request is limited to deciding whether the trial court abused its discretion. United States v. Pigford, 461 F.2d 648, 649 (4th Cir.1972). Although Robotham couches his argument in broad constitutional terms of "due process" and "compulsory process," it is he who forewent the use of compulsory process to secure Mrs. Robotham's testimony. Moreover, in light of the overwhelming evidence of Robotham's guilt, we are hard-pressed to imagine how her testimony might have influenced the outcome. The record contains nothing that indicates what exactly her testimony would have been.[1] Finally, we cannot see how she was "unavailable" as that status is defined in Fed.R.Evid. 804(a). It was not an abuse of the court's discretion to deny a continuance under the circumstances.
 
 F.
 
 15
 Robotham's last contention, and the only one which gives us more than a little difficulty, is that the prosecutor's reference to a Jamaican drug organization unfairly prejudiced him in the jury's eyes. During cross-examination of Robotham, he was asked if he was familiar with the term "Shower Posse." After Robotham testified that it was a Jamaican organization involved in the international drug trade, the prosecutor asked Robotham whether he knew certain individuals and whether they were members of Shower Posse; he also asked if Robotham himself was the "main member of the Shower Posse in the Roanoke Valley." Robotham stated that one of the persons named was a member, but denied that any of the others (including himself) were members. The defense vigorously objected to these questions, but the court overruled each objection and stated that the line of questioning was proper crossexamination that went to the witness's credibility.
 
 
 16
 Robotham now contends that such references were an attempt to imply, without any supporting evidence, that he was a member of a large, illegal drug organization, and that he was thereby unfairly prejudiced.[2] The government's response, as far as we are able to tell, is that the questions were a permissible attempt to discredit Robotham's prior testimony on direct examination that he formerly worked as a policeman in Jamaica. We believe that the questions were gratuitous, but not that they rose to the level of reversible error.
 
 
 17
 The trial court's discretion to admit or not admit evidence on relevancy grounds is quite broad. If the probative value of even relevant evidence is outweighed by the danger of unfair prejudice, it may be excluded, Fed.R.Evid. 403, and we will find error only when the court can be said to have acted "arbitrarily or irrationally." United States v. Masters, 622 F.2d 83, 88 (4th Cir.1980). We are of the opinion that the relevancy of the evidence is slight and the possibility of unfair prejudice acute. In a closer case, a similar line of questioning may require reversal. Veiled appeals to racial or ethnic prejudice have no place in our criminal justice system. However, we again point to the overwhelming evidence of guilt on each count. Arrayed against Robotham's denial of guilt was the first-hand testimony of Casey, albeit testimony somewhat tainted by his background; the clear evidence that the apartment that was the subject of the second search was solely under Robotham's control; and the products of the two searches, including the marked money used in the purchases by Casey. Even if the admission of the Shower Posse evidence was erroneous, we cannot say it was other than harmless. Fed.R.Crim.P. 52(a).
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Defense counsel stated that "... she will definitely corroborate his [Robotham's] version of the facts and add some insight to facts that he may not be able to testify to...."
 
 
 [2]
 In his brief, appellant actually complains about references to Shower Posse in the government's closing argument. We are unable to locate any such references, but we will assume the argument also goes to the objected-to cross-examination